# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Jamiel M. Hargrove, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 1:20cv1188 (LO/JFA) |
| | ) | |
| Israel Hamilton, | ) | |
|     Respondent. | ) | |

## MEMORANDUM OPINION

Jamiel M. Hargrove, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions for second-degree murder, using a firearm in the commission of a murder, robbery, conspiring to commit robbery, and using a firearm in the commission of a robbery, entered in the Circuit Court of Danville, Virginia. Dkt. No. 1; Resp't Ex. A-6. Respondent has filed a Motion to Dismiss and Rule 5 Answer, along with a supporting brief. Dkt. Nos. 16–18. Hargrove received the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Dkt. No. 19, and has not filed an opposing brief. Because the state court rulings were not contrary to, or an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States, or based on an unreasonable determination of the facts in light of the evidence presented, the § 2254 petition will be dismissed.

## I. Background

On September 11, 2014, when Hargrove was seventeen years old, he and Tevin Stokes shot and killed Paul Harper, Jr., during a drug purchase, then stole the drugs off his body before fleeing. When police detectives from Danville, Virginia (where the crimes occurred) traveled to Vance County, North Carolina (where Hargrove lived) on October 30, 2014, to interview him

about the murder, Hargrove invoked his right to counsel, and questioning ended. Resp't Ex. B-2. He volunteered to speak with the investigating detectives eleven days later, on November 10, 2014, when the officers returned to execute a search warrant to collect a DNA sample from Hargrove. Id.

At trial Detective Casey Allen testified that, during the interview, Hargrove "admitted to being involved in the murder" of Harper. Trial Tr., at pp. 99, 103. In particular, Hargrove admitted that "he and Tevin Stokes had set up a meeting with Paul Harper, Jr.," and when they met up, "[t]hey had an exchange of words, and then Mr. Harper turned toward Mr. Hargrove and . . . Mr. Hargrove started shooting Mr. Harper. He said he saw him fall to the ground, and then . . . Tevin Stokes came over with the shotgun, and fired some rounds, and hit Mr. Harper." Id. at p. 103, 105. Hargrove further relayed to the detective that, afterwards, Stokes told him to take off Harper's pants, which he did, and Stokes "went through the pants and found some weed in one of the pockets." Id. at p. 114. Hargrove additionally told the detective that "he never saw a gun on [Harper]." Id. at p. 105–06.

Lashantae Smith, who was with Stokes and Hargrove at the time of the murder, testified about the events leading up to and after the shooting. Id. at pp. 83–99. She testified that the three drove to meet Harper to purchase marijuana. Id. at p. 87. On the way, Stokes "sa[id] they gonna rob [Harper], and [Hargrove] agreed." Id. at p. 88. When they arrived at the meetup location, she stayed in the car in a shopping center parking lot while Stokes and Hargrove met Harper at a nearby apartment complex. Id. at p. 89. After she heard gunshots, she saw Stokes and Hargrove run back to the car; Hargrove, she added, was carrying Harper's pants and a handgun. Id. at p. 90–91. She further testified that Hargrove "found some weed" in the pants and "was hyped" as he talked about how he shot Harper. Id. at p. 92.

Hargrove testified in his own defense. He averred that on September 11, 2014—the day of the robbery and murder—he was at a park in Henderson, North Carolina, when Stokes asked if he wanted to go to Virginia to "chill." Id. at p. 152–53. The two, plus Lashantae Smith, drove to Virginia, where they played video games at Smith's home. Id. at p. 154–55. That evening, they left "to go get some weed" from Harper. Trial. Id. at p. 156. During the meetup, Hargrove testified, he stepped away to take a telephone call, and, after a couple of minutes, he heard what he described as a loud argument. Id. at p. 165–66. He turned around and saw Harper "rushin' towards me . . . pullin' out a gun," so he "got nervous, pulled out the gun I had for to protect myself . . . and started shootin' towards [Harper]." Id. at p. 167–68. Harper was still alive at the time—asking for help—when Stokes came over and shot Harper three times in the back, after which Harper "stopped talkin' and stopped movin'." Id. at p. 169, 171–72 . Next, Hargrove testified, Stokes demanded that Hargrove surrender his gun and ordered him to take Harper's pants. Id. at p. 172. As for his statements to Detective Allen, Hargrove testified that "I just told him stuff, just for him to leave me alone. Certain stuff I told him was true. Certain stuff I just made up, 'cause I was scared, I was nervous." Id. at p. 176.

A jury returned a guilty verdict finding that Hargrove had committed the crimes of second-degree murder, Va. Code § 18.2-32, using a firearm in the commission of a murder, id. § 18.2-53.1, robbery, id. § 18.2-58, conspiring to commit robbery, id., and using a firearm in the commission of a robbery, id. § 18.2-53.1. Resp't Ex. A-5–A-6.

At sentencing Harper's appointed lawyer asked the trial judge to impose a sentence within the guidelines range of sixteen and one half years to twenty-five years and eleven months, urging the judge to consider that Hargrove "is a young man," who "turned eighteen in jail and he can pull a lot of time in the penitentiary and still get out and still have some life to lead and prove

... that he can be a productive member of society." Sentencing Tr., at p. 261. The judge imposed

a sentence of eighty-six years' incarceration with twenty-five years suspended. Resp't Ex. A-9.

The trial judge described the offenses as "a capital murder being committed on our streets," but

told Hargrove that, "based on your age and the decisions of the United States Supreme Court,

you could not be held accountable for capital murder. But this Court has no doubt that that's

what you did. You committed a murder in the course of a robbery." Sentencing Tr., at p. 265.

The trial court entered judgment on October 28, 2015. Resp't Ex. A-9.

## II. Postconviction Procedural History

Hargrove appealed his conviction, but his appointed lawyer moved for leave to withdraw

under Anders v. California, 386 U.S. 738 (1967), arguing that the only trial court ruling that

might arguably support an appeal is the denial of Hargrove's motion to suppress his confession.

Resp't Ex. B-1, B-7. The Court of Appeals of Virginia concluded "the case to be wholly

frivolous." Resp't Ex. B-1. The Supreme Court of Virginia refused the petition for appeal on

March 20, 2018. Resp't Ex. C-1.

Hargrove filed a petition for a writ of habeas corpus in the Circuit Court for the City of

Danville on December 26, 2018, in which he raised five claims of ineffective assistance of

counsel.

> (A) Counsel's failure to act as a diligent and loyal advocate when he failed to
> object prior to the return of indictments that the circuit court lacked jurisdiction
> over the offense since the juvenile court failed to comply with the mandatory
> parental notification requirement;
>
> (B) Counsel's failure to move for an evaluation of petitioner's mental
> competence;
>
> (C) Failure to question the jury panel of twenty members during voir dire that
> comprise of jurors over the age of fifty if anyone was prejudiced against petitioner
> due to his young age and being a juvenile;

> (D) Counsel's failure to advocate on his behalf that his sentence was the functional equivalent of a life without parole sentence that is unconstitutional; and
>
> (E) Counsel's failure to question prospective jurors during voir dire the mandatory questions whether anyone was an officer, director, agent or employee of petitioner, or had any interest in the trial or outcome of the trial.

Resp't Ex. D-1–D-15. The Circuit Court denied each claim, concluding that Hargrove failed to

prove deficient performance or prejudice under the test outlined in <u>Strickland v. Washington</u>,

466 U.S. 668 (1984). Resp't Ex. D-27–D-28. The Supreme Court of Virginia refused the petition

for appeal. Resp't Ex. D-35.

Hargrove filed this federal petition for a writ of habeas corpus on September 16, 2020.

Dkt. No. 1, at p. 35. The petition raises six claims, reiterating the claims from his direct appeal

and state habeas petition:

> (1) Hargrove's Sixth Amendment right to effective assistance of counsel was violated in five ways:
>
>> (A) Counsel's failure to act as a diligent and loyal advocate for failure to object prior to the return of the indictments for failure to comply with the mandatory parental notification requirement;
>>
>> (B) Counsel's failure to move for an evaluation of petitioner's mental competence;
>>
>> (C) Failure to question jury panel of twenty members during voir dire that comprise of jurors over the age of fifty if anyone was prejudiced against petitioner due to his young age and being a juvenile;
>>
>> (D) Counsel's failure to advocate on his behalf that his sentence was the functional equivalent of life without parole that is unconstitutional;
>>
>> (E) Counsel's failure to question prospective jurors during voir dire the mandatory questions whether anyone was an officer, director, agent or employee of Petitioner, or had any interest in the trial or outcome of the trial; and
>
> (2) Hargrove's due process rights were violated because a custodial interrogation held at the Vance County Jail where petitioner had invoked his right to counsel

that was not scrupulously honored by the return of police with warrant for buccal swab of DNA of Petitioner, there any statements made was not voluntary.

Dkt. No. 1. Respondent concedes that each claim has been exhausted. <u>See</u> 28 U.S.C. § 2254(b)(1)(A).

## III. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), if a state court has adjudicated a petitioner's claim on the merits, a federal court may grant a petition for a writ of habeas corpus under 28 U.S.C. § 2254 only if the state court proceedings (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). When § 2254(d) applies, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Virginia v. LeBlanc</u>, 137 S. Ct. 1726, 1728 (2017) (internal quotation marks and citation omitted). Additionally, fact determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e).

## IV. Analysis

### Ground (1): Ineffective Assistance of Counsel

Hargrove brings five claims of ineffective assistance of counsel. To prevail Hargrove must show that "(1) counsel's representation fell below an objective standard of reasonableness, and (2) "that any such deficiency was 'prejudicial to the defense.'" <u>Garza v. Idaho</u>, 139 S. Ct. 738, 744 (2019) (quoting <u>Strickland</u>, 466 U.S. at 687–88, 692). When a <u>Strickland</u> claim has

been reviewed on the merits by a state court, this Court's review is "highly deferential" because it "defer[s] to the state court's judgment, and under clearly established Supreme Court precedent, the state court defers to counsel's presumptive 'sound trial strategy.'" Morva v. Zook, 821 F.3d 517, 528 (4th Cir. 2016) (quoting Strickland, 466 U.S. at 689). Accordingly, when § 2254(d) applies to a Strickland claim, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 562 U.S. 86, 105 (2011).

### Ground (1)(A): Counsel's Failure to Object based on Parental Notification

Hargrove argues that his trial lawyer was ineffective for failing to object—before the return of indictments—to the state's failure to comply with the mandatory parental notification requirement in the Juvenile and Domestic Relations District Court for the City of Danville, where the criminal proceedings began. In the state court, but not in the § 2254 petition, Hargrove framed counsel's deficiency as not objecting on jurisdictional grounds. The Danville Circuit Court dismissed this claim "because the parental notification requirement is not jurisdictional," so "Petitioner can meet neither showing required under Strickland." Resp't Ex. D-29.

> Under Strickland counsel "need not raise every possible claim to meet the constitutional standard of effectiveness." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014). The Court finds Petitioner has not offered any "exceptional grounds" to challenge counsel's failure to object to this Court's jurisdiction. United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005). Indeed, counsel would have had no basis to do so as the parental notification requirement under Va. Code § 16.1-269.1 is non-jurisdictional. See Shackleford v. Commonwealth, 262 Va. 196, 205-06, 547 S.E.2d 899, 904 (2001); Va. Code § 16.1-269.1(E). This Court finds counsel is not required to raise a futile objection. Correll v. Commonwealth, 232 Va. 454, 469-70, 352 S.E.2d 352, 360-61 (1987). The Court also finds that Petitioner has failed to allege any prejudice arising from counsel's failure to object.

Id.

Respondent contends that Hargrove has not established that the state court's conclusion was contrary to, or an unreasonable application of federal law, or was based on an unreasonable determination of the facts. The Court agrees. Once the Danville Circuit Court determined that the proposed objection would have been futile under state law, it reasonably concluded that counsel's performance did not fall below an objective standard of reasonableness in not making a baseless objection. See Oken v. Corcoran, 220 F.3d 259, 269–70 (4th Cir. 2000) (concluding that trial counsel was not ineffective for failing to make futile objection). Moreover, the Circuit Court offered a "reasonable argument that counsel satisfied Strickland's deferential standard" when it concluded that Hargrove failed to allege prejudice stemming from counsel's failure to object. See Harrington, 562 U.S. at 105. Indeed, "[t]o establish actual prejudice, the petitioner must convince [the Court] that in the absence of unprofessional errors by his attorney[] there is a reasonable probability, i.e., one adequate to undermine [the Court's] confidence in the result, that 'the result of the proceeding would have been different.'" Wright v. Angelone, 151 F.3d 151, 161 (4th Cir. 1998) (quoting Strickland, 466 U.S. at 694). In neither his state habeas petition, nor his federal habeas petition, has Hargrove explained how the outcome of the proceeding ultimately would have differed had the objection been made. Claim (1)(A) therefore must be dismissed.

### Ground (1)(B): Counsel's Failure to Move for a Mental Competence Evaluation

Next, Hargrove claims that counsel was constitutionally ineffective for failing to move for an evaluation of his mental competence. The Danville Circuit Court rejected this claim.

> Petitioner has failed to satisfy Strickland's performance or prejudice prongs in regard to claim (B) because he has failed to provide an adequate factual basis for his claim that a competency evaluation was necessary, and trial counsel credibly asserts he had no reasonable basis to believe that such an evaluation was

8

necessary. Petitioner has not provided the court with a sufficient factual basis for the claims alleged as he does not allege either (1) any failure on his part to understand the proceedings against him or (2) any prejudice suffered because the evaluation was not done. This failure to proffer is fatal to his claim. Muhammad v. Warden, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007).

Additionally, the Court finds that Petitioner's allegation that he required such an evaluation is belied by his trial counsel's credible affidavit. The Court credits counsel's evaluation that "[a]t no point in the preparation of the case, any hearing in the case, or the trial in the case did Mr. Hargrove evince a scintilla of behavior that suggested he did not understand the charge, my role as his attorney, courtroom procedure, or the role of any other person in the process." While the opinion of counsel is not determinative, he is in the best position to evaluate his client's understanding of the proceedings. See Hernandez v. Ylst, 930 F.2d 714, 718 (1991).

Resp't Ex. D-29–30.

The § 2254 petition does not confront the Danville Circuit Court's credibility finding or conclusion that Hargrove failed to provide a factual basis for the claim. "[A] state court's findings of fact are entitled to a 'presumption of correctness,' which a petitioner may rebut only by 'clear and convincing evidence.'" Hill v. Ozmint, 339 F.3d 187, 194 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). Hargrove has not. He only repeats the assertion he raised in his state habeas petition that he had "informed his attorney that he had previously been told by the state that he had developmental disabilities, and cognitive functioning difficulties." Pet'r Mem. of Law, at p. 4; see also Resp't Ex. D-7. Because Hargrove did not offer the state habeas court (or this Court) any evidence to suggest that he did not have "a rational understanding of the proceedings" and could not assist in his own defense, see Baker v. Clarke, 95 F. Supp. 3d 913, 920 (E.D. Va. 2015) (citing Dusky v. United States, 362 U.S. 402 (1960)), the Court cannot conclude that the state court's application of Strickland was incorrect or unreasonable. Claim (1)(B) therefore must be dismissed.

### Ground (1)(C): Counsel's Failure to Question Potential Jurors about Age Bias

Hargrove also contends that his trial lawyer was ineffective for failing to inquire during voir dire whether any of the potential jurors would be biased against petitioner based on his "relatively young age and juvenile status," given that, according to Hargrove, "his jury panel contained an unusually high number of jurors over the age of 50 years old." Pet'r Mem. of Law, at p. 7. The state habeas court rejected this claim.

> [T]he Court finds counsel pursued a reasonable strategy by declining to call attention to Hargrove's age, and Hargrove has failed to demonstrate actual prejudice because he has not shown any age-related bias on the part of the jury. Given counsel's estimation that Petitioner's "age inured to his benefit not his detriment" as his "physical appearance was that of a child, not a grown, hardcore killer," it was entirely reasonable to decide not to call the jury's attention to Hargrove's age.
> Furthermore, the Court finds Petitioner has again failed to support his contention with a sufficient factual basis for a finding by this Court. Petitioner has not provided any factual basis to believe that any juror on the panel did not stand impartial to his case or harbored any bias or prejudice against him. Juniper v. Warden, 281 Va. 277, 294, 707 S.E.2d 290, 306 (2011).

Resp't Ex. D-30–D-31. Under the AEDPA's highly deferential standard, the question for this Court "is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105. "[C]ounsel's actions during voir dire are presumed to be matters of trial strategy," Conner v. Polk, 407 F.3d 198, 206 n.5 (4th Cir. 2005) (quoting Miller v. Francis, 269 F.3d 609, 615–16 (6th Cir. 2001)). And Hargrove offers no reason to disturb that presumption. Claim (1)(C) therefore must be dismissed.

### Ground (1)(D): Counsel's Failure to Argue that the Sentence was Unconstitutional

In his fourth claim of ineffective assistance, Hargrove urges that counsel failed to provide constitutionally effective assistance during sentencing by failing to argue that his sentence was the functional equivalent of a life sentence and, thus, unconstitutional. The state habeas court dismissed this claim.

The Court finds in claim (D) that Petitioner has failed to meet either Strickland requirement because (1) trial counsel did argue that Hargrove's age was a factor the judge should consider in fashioning his sentence, and (2) settled Virginia precedent demonstrates conclusively that Hargrove's sentence was not in violation of the Eighth Amendment.

First, the Court finds that trial counsel did argue Petitioner's age and experience before the judge at sentencing through evidence presented and the sentencing argument. Specifically in argument, counsel reminded the judge that Hargrove was a "young man" who "turned eighteen in jail." Therefore, the Court finds that trial counsel did indeed ask the judge to consider mitigating factors related to Hargrove's age and experience when fashioning a sentence for his crimes. Additionally, the record reflects that the trial judge had reviewed the presentence report and guidelines before the sentencing hearing and had the opportunity to consider mitigating circumstances before imposing Petitioner's sentence.

Second, the Court finds that Petitioner has failed to demonstrate any prejudice arising from counsel's performance because, under settled Virginia law, his sentence conclusively does not violate the Eighth Amendment. The Supreme Court's precedents concerning the imposition of life sentences on juvenile offenders are all inapplicable to Petitioner's case because he did not receive a mandatory sentence of life without parole. Instead he received an aggregate sentence of 61 year with the possibility of geriatric release.

Virginia's Supreme Court, with the approval of the United States Supreme Court, has held that such a sentence, which is in proportion to the defendant's crimes, is appropriate under the Eighth Amendment. See Virginia v. LeBlanc, 137 S. Ct. 1726, 1729 (2017) (per curiam) (affirming reliance on Angel v. Commonwealth, 281 Va. 248, 704 S.E.2d 386 (2011) and holding Virginia's conditional release program satisfies the requirement that juveniles have a "meaningful opportunity to receive parole" because the program "employ[s] normal parole factors"); Johnson v. Commonwealth, 292 Va. 772, 780-81, 793 S.E.2d 326, 331 (2016) (holding that offenders who are eligible for geriatric release pursuant to Virginia Code § 53.1-40.01 are considered eligible for parole under Miller); Vasquez v. Commonwealth, 291 Va. 232, 246, 781 S.E.2d 920, 928 (2016) (holding aggregate term-of-years sentences which may equal a life sentence do not offend the Eighth Amendment).

Resp't Ex. D-31–D-32.

The Danville Circuit Court's conclusion is not contrary to, or an unreasonable application of Strickland. First, the Circuit Court rightly observed that Hargrove's attorney emphasized to the sentencing judge that Hargrove was a juvenile when he committed the crimes. Moreover, the Circuit Court also correctly concluded that Hargrove could not establish that he suffered

11

prejudice from counsel's failure to argue that the sentence was unconstitutional because under Virginia law, the sentence—which was not mandatory and permits geriatric release—*is not*, in fact, unconstitutional. See LeBlanc, 137 S. Ct. at 1727–29 (observing that Virginia courts had concluded that offering geriatric release for juvenile life sentences complies with Eighth Amendment and holding that state court's conclusion is entitled to deference under AEDPA); See Miller v. Alabama, 567 U.S. 460, 470 (2012) (holding that *mandatory* life without parole for juveniles violates Eighth Amendment); see also United States v. Friend, No. 20-4129, —F.4th—, 2021 WL 2639249, at *6 (4th Cir. June 28, 2021) (opining that "lengthy sentences are not ipso facto life sentences" for juvenile offenders; acknowledging that "a court could impose a sentence that is so long as to equate to a life sentence without parole"; and concluding that 52-year sentence that would release defendant from incarceration in his sixties does not equate to life imprisonment). Claim (1)(D) therefore must be dismissed.

**Ground (1)(E): Counsel's Failure to Ask Mandatory Questions during Voir Dire**

Hargrove's final enumerated ground for ineffective assistance of counsel claims that his appointed lawyer failed to question the potential jurors about whether anyone was an officer, director, agent or employee of Petitioner, or had any interest in the trial or its outcome. Hargrove describes these questions as mandatory. The Danville Circuit Court dismissed this claim "because the venire was extensively examined as to whether they knew the parties or had any knowledge of the case, and because Hargrove again has failed to demonstrate prejudice." Resp't Ex. D-33.

> During the voir dire process, the venire was questioned by the court as to whether they: (1) knew or were related to Petitioner; (2) had formed any opinion as to Petitioner's guilt or innocence; (3) had any bias against Petitioner; or (4) had any information about the case. Therefore, while the specific questions relating to a business relationship or an interest in the case were not propounded by any participant to the jurors, counsel was not defective for failing to do so, as the

essence of the question – whether the juror had any relationship to Petitioner or the case – had already been discussed.

Further, the Court finds Petitioner has again failed to allege, or demonstrate, any actual prejudice from counsel's failure to ask these specific questions. Without such a showing, Hargrove cannot demonstrate he was prejudiced by counsel's failure.

Id.

The Circuit Court's analysis convinces the Court that there are reasonable arguments that counsel satisfied Strickland's deferential standard. See Harrington, 562 U.S. at 105. Indeed, Hargrove offers no reason to suggest that the outcome would have differed had those specific questions been asked. Claim (1)(E) therefore must be dismissed.

### Ground (2): Improper Custodial Interrogation after Invoking Right to Counsel

Lastly, Hargrove contends that his constitutional rights were violated when police returned with a warrant for a buccal swab and obtained inculpatory statements from him even though, eleven days earlier, he had invoked his right to counsel. On direct appeal, the Court of Appeals of Virginia concluded that this claim was meritless.

On October 30, 2014, Danville Police Detectives Whitley and High traveled to Vance County, North Carolina to interview [Hargrove] about the murder of Paul Harper. [Hargrove] refused to speak with them and invoked his right to counsel. The detectives terminated the interview. After obtaining a search warrant to collect a DNA sample from [Hargrove], the detectives returned on November 10, 2014. North Carolina Detective Logue read the search warrant to appellant and told him it was connected to the investigation of Harper's murder. [Hargrove] then denied knowing anything about the murder. Logue informed [Hargrove] that because he had earlier invoked his right to counsel, the detectives were not there to interview him, unless [Hargrove] desired to make a statement. [Hargrove] stated that he wanted to talk to the police. The officers again advised [Hargrove] of his Miranda rights. [Hargrove] stated he understood his rights and signed a written waiver of his rights. The police then interviewed [Hargrove].

In Edwards v. Arizona, 451 U.S. 477 (1981), the Court "extended the principles set forth in Miranda to subsequent interrogation," Commonwealth v. Gregory, 263 Va. 134, 146 557 S.E.2d 715, 722 (2002), by holding that, after a suspect "expressed his desire to deal with the police only through counsel," interrogation must cease until either his counsel has been made available to him

or until "the accused himself initiates further communication, exchanges, or conversation with the police," Edwards, 451 U.S. at 484-85.

> To determine the admissibility of a statement under the Edwards rule, we apply a three-part analysis. The first step in this analysis is determining "whether the accused unequivocally invoked his or her right to counsel." Giles v. Commonwealth, 28 Va. App. 527, 532, 507 S.E.2d 102, 105 (1998). The second step is to "determine whether the accused, rather than the authorities, reinitiated further discussions or meetings with the police" after that invocation. Id. The third step is to determine whether, after the accused reinitiated communication with the police, he made a "knowing and intelligent waiver" of the previously invoked right to counsel. Id.; see also North Carolina v. Butler, 441 U.S. 369 (1979).

> Here, [Hargrove] invoked his right to counsel and then later stated his desire to speak to the police. The officers again advised [Hargrove] of his Miranda rights and [Hargrove] waived his rights and signed the rights waiver form before speaking with the police. The record fully supports the trial court's denial of [Hargrove]'s motion to suppress his statements to the police.

Resp't Ex. B-2–B-3.

Hargrove has not established that the state court's conclusion was contrary to federal law or an unreasonable application of federal law. The state habeas correct identified the correct applicable federal law, see Edwards, 451 U.S. at 484–85; see also Fare v. Michael C., 442 U.S. 707, 725 (1979) (holding that courts need not apply different analytical standard to determine whether juvenile waived right to counsel), and reasonably applied the law to the trial court's factual findings, cf., United States v. Blake, 571 F.3d 331, 340–41 (4th Cir. 2009) (opining that officer executing legal duty to provide notice of charges to accused was not functional equivalent of interrogation and concluding that officer did not reinitiate questioning).

### V. Motion for Evidentiary Hearing

Hargrove requests an evidentiary hearing "to resolve the factual disputes and to provide petitioner the opportunity to prove the stated grounds for habeas relief." Dkt. No. 8. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). Moreover, a federal district

14

court cannot grant an evidentiary hearing if a petitioner "failed to develop the factual basis of a claim in State court proceedings," unless

> (A) the claim relies on
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Hargrove has not asserted any of the above grounds that would render an evidentiary hearing permissible. Therefore, the motion must be denied.

## VI. Motions for Appointed Counsel

Finally, the Court will rule on Hargrove's motions for appointed counsel. Dkt. Nos. 7, 23, 24. In each motion he argues that he needs an appointed attorney because he lacks knowledge of the law and is housed in a restrictive cell block. There is no right to counsel in habeas proceedings, see Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), but the Court may exercise its discretion to appoint counsel if it "determines that the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B). Here, Hargrove presents no unique circumstances for which justice requires appointed counsel. Indeed, the § 2254 petition clearly states Hargrove's claim, none of which are complex. The motions therefore will be denied.

## VII. Conclusion

For the reasons stated above, respondent's motion to dismiss will be granted, and a certificate of appealability will be denied. Petitioner's motions for an evidentiary hearing and for

appointment of counsel will be denied. The § 2254 petition and motions will be dismissed with prejudice through an Order that will issue alongside this Memorandum Opinion.

Entered this 14ᵗʰ day of July 2021.

Alexandria, Virginia

_____ /s/
Liam O'Grady
United States District Judge